UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JORGE ANTONIO MURILLO QUINTANILLA, | ) ) ) | CASE NO.: 4:26-cv-00786 |
| Petitioner, | ) ) | JUDGE BRIDGET MEEHAN BRENNAN |
| v. | ) ) | |
| KEVIN RAYCRAFT, Field Office Director of Enforcement and Removal Operations, Immigration and Customs Enforcement, *et al.*, | ) ) ) ) | **MEMORANDUM OPINION AND ORDER** |
| Respondents. | ) ) ) | |

Before the Court is Petitioner Jorge Antonio Murillo Quintanilla's ("Petitioner") Petition

for Writ of Habeas Corpus under 28 U.S.C. § 2241 ("Petition").  (Doc. 1.)  Respondents are

Kevin Raycraft, Field Office Director of the Cleveland Field Office for Immigration and

Customs Enforcement ("ICE"); Markwayne Mullin, Secretary of the United States Department

of Homeland Security; and Todd Blanche,[1] Acting United States Attorney General.  (*Id.*)

Respondents opposed the Petition.  (Doc. 3.)  Petitioner replied.  (Doc. 4.)  For the reasons

herein, the Petition for Writ of Habeas Corpus is GRANTED.

## I.  BACKGROUND

Petitioner is a citizen and national of Honduras.  (Doc. 1 at 4, ¶ 15.)[2]  Since January 9,

---

[1] Since the filing of the Petition, Todd Blanche replaced Pamela Bondi as Acting United States Attorney General.  Pursuant to Rule 25(d), which automatically substitutes successors as a party, Acting Attorney General Blanche is now named in this action.

[2] For ease and consistency, record citations are to the electronically stamped CM/ECF document and PageID# rather than any internal pagination.

2019, he has lived in the United States.  (*Id.* at 2, ¶ 2.)[3]  Though not specifically stated, it appears Petitioner entered the United States without inspection and without detention.  Petitioner states he has "filed for immigration relief with the Cleveland Immigration Court and has complied with the requirements of the court."  (*Id.* at ¶ 3.)  On January 28, 2026, Petitioner was detained in connection with a traffic stop.  (*Id.* at ¶ 4.)  Respondents charged Petitioner as removeable and transferred him to immigration detention.  (Doc. 3 at 58.)  He is currently detained at the Northeast Ohio Correctional Center.  (Doc. 1 at 4, ¶ 15.)

On April 1, 2026, Petitioner filed the instant Petition, arguing that continued detention without a bond hearing violates the Immigration and Nationality Act ("INA") and the Due Process Clause of the Fifth Amendment.  (Doc. 1 at 8-11, ¶¶ 33-45.)  The crux of the dispute is Petitioner's designation as mandatorily detained pursuant to 8 U.S.C. § 1225 of the INA.  Before July 8, 2025, noncitizens in the United States were viewed as being subject to Section 1226, which allows for bond hearings and the potential for release during the pendency of removal or asylum proceedings.  Since July 8, 2025, noncitizens in the United States are viewed as being subject to Section 1225, which mandates detention during removal proceedings in nearly every instance with no bond hearing.  Petitioner seeks immediate release.  (*Id.* at 10-12, ¶¶ 46-51.)

## II.     ANALYSIS

Any "individual detained within the United States" may seek a writ of habeas corpus. *Hamdi v. Rumsfeld*, 542 U.S. 507, 525, 124 S. Ct. 2633, 159 L. Ed. 2d 578 (2004) (citing U.S. Const., Art. I, § 9, cl. 2).  Habeas relief is available where a person's custody violates "the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).

---

[3] Later in his Petition, Petitioner states he "has resided in the United States since 2023."  (*Id.* at 8, ¶ 34.)

The central question is the basis for Petitioner's detention.  (Doc. 1 at 5, ¶¶ 21-32.)
Respondents argue Petitioner is subject to mandatory detention under 8 U.S.C. § 1225 of the
INA.  (Doc. 3 at 58.)  Petitioner argues his detention was an exercise of discretionary
enforcement authority under 8 U.S.C. § 1226.  (Doc. 1 at 7, ¶ 32.)  Because Respondents'
interpretation of Section 1225 runs counter to well established canons of statutory construction,
their contention that Section 1225(b)(2)(A) authorizes Petitioner's detention without a bond
hearing lacks merit.[4]

The "starting point" for any statutory interpretation question "is the statutory text."
*Desert Palace, Inc. v. Costa*, 539 U.S. 90, 98, 123 S. Ct. 2148, 156 L. Ed. 2d 84 (2003); *see also
J. B-K. by E.B. v. Sec'y of Ky. Cabinet for Health & Fam. Servs.*, 48 F.4th 721, 726 (6th Cir.
2022).  The Court "must give effect to the clear meaning of statutes as written."  *Star Athletica,
LLC v. Varsity Brands, Inc.*, 580 U.S. 405, 414, 137 S. Ct. 1002, 197 L. Ed. 2d 354 (2017); *see
also Kentucky v. Biden*, 23 F.4th 585, 603 (6th Cir. 2022).  The words in the statute are given
their "ordinary, contemporary, [and] common meaning" while also being assessed in context
with the remaining statutory language.  *Biden*, 23 F.4th at 603 (citations and quotations omitted).

Section 1225(a)(1) defines "an applicant for admission" as an "alien present in the United
States who has not been admitted or who arrives in the United States[.]"  Section 1225(b)(2)(A)
states: "in the case of an alien who is an applicant for admission, if the examining immigration
officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to
be admitted, the alien shall be detained for a proceeding under section 1229a of this title."  In this

---

[4] In its return of writ, Respondents acknowledge recent decisions in *Chavez v. Dir. Of Detroit
Field Office*, No. 25-cv-2061, 2025 WL 3187080, 2025 U.S. Dist. LEXIS 224173 (N.D. Ohio
Nov. 14, 2025) (Lioi, J.) and *Lemus v. Lynch*, No. 26-cv-203, 2026 WL 496731, 2026 U.S. Dist.
LEXIS 36009 (N.D. Ohio Feb. 23, 2026) (Lioi, J.), but reiterate their arguments regarding the
mandatory detention of noncitizens.

way, three things must be demonstrated for Section 1225(b)(2)(A) to apply: the person must be (1) "an applicant for admission"; (2) "an alien seeking admission"; and (3) "not clearly and beyond a doubt entitled to be admitted."

An "applicant for admission" is defined in Section 1225(a)(1). An "alien seeking admission" is not defined anywhere in the INA. Respondents urge that every "applicant" is also "seeking admission."

This argument is unpersuasive. First, for Section 1225(b)(2)(A) to apply, Respondents must show that the person is "an applicant for admission." If demonstrated, Respondents must then show the person is also "seeking admission." For the Court to be persuaded by Respondents' assertion that these two considerations are one in the same would require it to disregard its own mandate to give effect to every clause, word, and provision of a statute. *See TRW Inc. v. Andrews*, 534 U.S. 19, 31, 122 S. Ct. 441, 151 L. Ed. 2d 339 (2001) (citing *Duncan v. Walker*, 533 U.S. 167, 174, 121 S. Ct. 2120, 150 L. Ed. 2d 251 (2001)). The statute plainly states that two things must be true—the person is an applicant and they are seeking admission. By its language, Congress has determined an applicant is distinct from someone who may also be seeking admission. "The canon against surplusage can be meaningful when a competing interpretation would avoid superfluity." *Bufkin v. Collins*, 604 U.S. 369, 387, 145 S. Ct. 728, 221 L. Ed. 2d 192 (2025). Such is the case here.

Second, Congress' chosen language is also notable. "Seeking" implies action. *Lopez-Campos v. Raycraft*, 797 F. Supp. 3d 771, 781 (E.D. Mich. 2025). It suggests something that one is in the process of doing. *Id.* Being an applicant is passive. The action is complete, and the waiting period has begun.

Third, consider the titles chosen for each section. While titles cannot override plain

words in a statute, referring to titles can be "tools available for resolution of a doubt."  *Spurr v. Pope*, 936 F.3d 478, 488 (6th Cir. 2019).  Section 1225 is titled "[i]nspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing."  The use of "arriving aliens" strongly corroborates that it applies to aliens who are in the act of *arriving* in the United States.  Meanwhile, Section 1226 is titled "[a]pprehension and detention of aliens." That title appears to apply directly to Petitioner, an alien apprehended and detained alien.  *See Martinez-Elvir v. Olson*, 807 F. Supp. 3d 725, 737 (W.D. Ky. 2025) (the title's "use of 'arriving aliens' to describe the noncitizens to whom the statute applies strongly suggests that § 1225 pertains to noncitizens first entering the United States."); *see also Pizarro Reyes v. Raycraft*, No. 25-cv-12546, 2025 WL 2609425, 2025 U.S. Dist. LEXIS 175767, at *13 (E.D. Mich. Sep. 9, 2025) ("The use of 'arriving' to describe noncitizens strongly indicates that the statute governs the *entrance* of noncitizens to the United States."); *Edahi v. Lewis*, No. 25-cv-129, 2025 WL 3466682, 2025 U.S. Dist. LEXIS 233006, at *18 (W.D. Ky. Nov. 27, 2025) ("'arriving' supports the notion that the statute governs 'arriving' noncitizens, not those present already").

Fourth, the Court's determination here is entirely consistent with *Jennings v. Rodriquez*, 583 U.S. 281, 138 S. Ct. 830, 200 L. Ed. 2d 122 (2018).  There, the Supreme Court recognized Section 1226(a) as "the default rule" for "aliens already present in the United States," while Section 1225 is paramount at "the Nation's borders and ports of entry . . . ."  *Id.* at 281.

Lastly, recent congressional action confirms the Court's interpretation of Section 1225. As the *Martinez-Elvir* court explained, the Laken Riley Act amended portions of the INA to exclude certain aliens from Section 1226 if they had been arrested, charged, or convicted of enumerated crimes.  *Martinez-Elvir*, 807 F. Supp. 3d at 738.  These aliens would have otherwise qualified for a bond hearing under Section 1226.  But to "read § 1226 [as Respondents do] would

ignore recent amendments to § 1226 and render Congress' recent actions entirely superfluous, a result that this Court has long been instructed to avoid." *Rodriquez v. Noem,* 812 F. Supp. 3d 751, 760 (W.D. Mich. 2025).  If every alien in the United States could be detained under Section 1225 and denied a bond hearing, the Act is meaningless.

Simply stated, the Court is not persuaded by Respondent's interpretation of the statute.  If Respondents seek relief from the INA's plain terms and chosen language, legislative action is the appropriate course.  Petitioner is improperly designated as a mandatory detainee pursuant to Section 1225(b)(2)(A).

Having found Petitioner improperly designated pursuant to Section 1225(b)(2)(A), the next issue is the remedy.  In similar past cases where courts have found the petitioner's mandatory detention improper, Respondents have been ordered Respondent to afford a bond hearing pursuant to Section 1226 or release the petitioner from custody.  Here, Petitioner contends that only immediate release from custody is a suitable remedy.  (Doc. 1 at 13, ¶ 51.)  To him, structural biases in the immigration system prevent fair and neutral bond hearings such that any bond hearing ordered by the Court will be little more than a "sham" proceeding.  (*Id.* at 11-13, ¶¶ 46-50.)  But this is speculation.  The Court cannot categorically say that every bond hearing is performative, not substantive.  And Petitioner offers no evidence to support this assertion.  If a bond hearing consistent with Section 1226 does not occur, Petitioner may bring a Due Process claim particular to that proceeding.

## III.    CONCLUSION

For the reasons stated above, Petitioner Jorge Antonio Murillo Quintanilla's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (Doc. 1) is GRANTED.  Within five (5) business days of this Order, Respondents must afford Petitioner a bond hearing consistent with

Section 1226 or release him from custody.

**IT IS SO ORDERED.**

Date:   April 20, 2026

BRIDGET MEEHAN BRENNAN
UNITED STATES DISTRICT JUDGE